Filed 8/30/13  P. v. Archuleta CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY ARCHULETA,<br><br>        Defendant and Appellant. | A138205<br><br>(Alameda County<br>Super. Ct. No. CH-46290) |

In January 2008, defendant Anthony Archuleta (defendant or Archuleta) was convicted of a felony assault and related misdemeanor convictions, including battery of a cohabitant.  Imposition of sentence was suspended and he was granted probation.

Archuleta violated probation in September 2012, when he and his girlfriend beat a man unconscious in the parking lot of the Oakland Coliseum following a Raiders game. After Archuleta admitted the probation violation, the court sentenced him to the low term of two years in state prison on the original offense.  As part of a negotiated plea, defendant agreed to waive all prior custody credits.  Although a newly substituted attorney set a postsentencing hearing to clarify the scope of the credits waiver, and although she requested that Archuleta be allowed to serve his prison sentence locally, she made it clear defendant was not requesting to withdraw his admission of the violation.

Archuleta appealed, and his appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  Counsel also declares that she advised Archuleta that he may personally file a supplemental brief, but he has not done so.

1

We have conducted our independent review of the record and find no arguable issues and affirm.

## FACTUAL AND PROCEDURAL HISTORY

On January 29, 2008, Archuleta was convicted by plea in Stanislaus County of felony assault (Pen. Code, § 245, subd. (a)(1)),[1] misdemeanor battery on a spouse or cohabitant (§ 273.5), and deterring an executive officer in the performance of duties (§ 69), also a misdemeanor. Imposition of sentence was suspended and he was granted probation for three years. In February 2009, his case was transferred to Alameda County for probation supervision pursuant to section 1203.9.

On December 21, 2010, defendant's probation was extended for six months (until June 21, 2011) to permit him to complete a 52-week domestic violence program. On April 13, 2011, the court modified his probation by extending it to a period of five years from the date of his original sentencing, or until January 29, 2013.

On September 20, 2012, Archuleta was charged with a violation of probation in that he failed to obey all laws by assaulting a man in the parking lot of the Coliseum following a Raiders football game. The man allegedly had argued with defendant's girlfriend, Monique Menconi, after the game. Menconi called defendant, who came to her location in the parking lot. Defendant and Menconi then chased the man down, and defendant sat on him and pummeled him with his fists, while Menconi kicked him in the head and face.

On January 24, 2013, defendant admitted the violation and was sentenced to the lower term of two years in state prison on the original offense. He was sentenced to 180 days concurrently on each of the misdemeanors. When it pronounced judgment the court clarified, "He was going to waive his credits. That was part of it. [¶] You're waiving your credits. Do you understand that you will only be given credits of one day today toward that sentence?" Defendant personally answered, "Yes." The judge

---

[1] All statutory references are to the Penal Code.

2

continued, "Okay. Then he has credits of one day toward that sentence." No objection to the credits waiver was raised at the time of sentencing.

Represented by a new attorney, defendant subsequently requested a hearing for purposes of "Clarification of whether waiver of credits included credits from 2008 or were the credits from 2012. Also, to request a paper commitment, due to [defendant's] need to keep in contact with his children [and] ill father [and] due to the fact that he reasonably believed this request would be brought before the court."

At that hearing on February 13, 2013, counsel explained, "there are different pockets of credits that Mr. Archuleta had acquired, 180 days back in 2008 and 149 since the present confinement on a probation violation. A waiver of credits cannot be accepted . . . ." Counsel further elaborated that "waiving the credits since the probation violation in January of 2012 [*sic*] would be completely acceptable, but a waiver of the prior credits from back in 2008—"

The court interrupted, "People routinely do it. It was a negotiated disposition. I'm looking at the change of plea transcript, it says he agreed." The court then recited the colloquy regarding waiver of credits quoted above. It concluded, "If he misunderstood that and it was represented to him he would get his prior credits that he had earned before he was incarcerated on the present violation, then that may give him grounds to withdraw his admission of his violation, but I'm not going to suddenly give him all the credits he agreed to give up."

Counsel then said, "It was unclear to both myself and Mr. Archuleta what that— whether the waiver did encompass both dockets or not." The court responded, "I think it is very clear from the record what the agreement was and what the Court was sentencing him to. Given that, is he making a request to withdraw his admission of his violation at this time?" Defense counsel responded in the negative. She said it was "purely a clarification matter at this point."

Defense counsel then raised a second issue, requesting that Archuleta be allowed to serve his sentence locally because he has three young children and a terminally ill father who would find it difficult or impossible to visit him at a distant state prison. The

3

court expressed the view that it could not "change State Prison time into local time," observing "[t]his was a violent offense. I remember this offense. And he was on probation for a violent offense." The court considered sympathetically the plight of his father's ill health, "but with these allegations and his history, I'm not inclined to grant it."

The prosecutor argued "this was a very violent offense. He was on felony probation for 273.5 and they beat this man unconscious at a Raiders game and then fled. They were stomping on his head and he was bloodied and they fled. [¶] The agreement was lowered from midterm to low term, not for Mr. Archuleta's benefit, but for Ms. Manconni's [*sic*] benefit because of what I talked to her attorney about and just looking over the facts. I have no desire to change the admission or the plea that was taken given his violent past."

The court then interjected, "I do recall this now. The negotiations that were occurring here at side bar and I thought this was a little low. He got lower than what he had been offered previously and now he wants local. I'm going to deny it. I'll take a look at the letter [regarding defendant's father's illness], but I can't imagine it's going to change my mind that he was already given a deal based on his conduct."

The court then asked the district attorney if he would "consider allowing him to stay local for mid term instead of low term? If it's that important for him to stay local." The prosecutor opposed that suggestion on grounds of defendant's violent conduct and his having agreed to the terms imposed as part of a negotiated plea and sentence. "Why should it be on the county's tab when it should be on the state's tab? That's what he agreed to and that's where he should go."

After hearing further argument from the defense, the court concluded, "Well, there were significant negotiations in this case. They were occurring with all of the attorneys here at side bar, at least the last negotiations because I distinctly recall those. And I recall, as I said, that he was given a good deal in this case. He's only going to do a year actual, and I hope when he gets out that he can still visit with his father and his mother, obviously. But this isn't a long sentence in light of what he did. [¶] So the requests are denied."

4

## DISCUSSION

We have reviewed the entire record as required by *People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442. We find no meritorious issues on which to request briefing.

Defendant was represented by counsel when he admitted the probation violation, waived custody credits, and was sentenced. He was given appropriate advisements before admitting the probation violation. As acknowledged in his notice of appeal, due to his admission of the violation, the only possible issues would be sentencing or other post-plea irregularities. (§ 1237.5; Cal. Rules of Court, rule 8.304(b).) There is no legitimate argument that a two-year prison term was an unauthorized sentence. (§ 245, subd. (a)(1) [wobbler: two, three or four years].) The sentences imposed on the misdemeanor counts were also within the terms prescribed by law. (§§ 69, 273.5.)

With respect to presentence credits, "a defendant may expressly waive entitlement to section 2900.5 credits against an ultimate jail or prison sentence for past and future days in custody." (*People v. Johnson* (2002) 28 Cal.4th 1050, 1055.) Here the record clearly establishes defendant's waiver of credits, that it was part of a plea agreement, and that it was intended to result in defendant's being granted only one day of presentence credits. No objection to the credits limitation was registered when it was imposed.

Though we find no ambiguity regarding credits that required clarification, the court accommodated new counsel's request for a hearing on that subject. Once the court indicated its disinclination to grant more custody credits, defense counsel who requested the hearing expressly declined the court's invitation to seek to withdraw defendant's admission. Defendant's appellate counsel was also clearly aware of the credits waiver and its circumstances, and concluded there was no meritorious issue to be raised. We, too, see no viable issue.

With respect to defendant's request to serve his time locally, that, too, was evidently the subject of negotiation. Defendant apparently was ineligible to serve his

sentence locally.[2]  (Pen. Code, §§ 1170, subd. (h)(3), 1192.7, subd. (c)(31).)  In any case, he agreed to serve his time in state prison.  We see no legal basis for allowing defendant to serve his sentence in county jail or to alter the terms of his plea agreement.

## DISPOSITION

The judgment is affirmed.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Haerle, J.

---

[2] Those convicted of serious or violent felonies are excluded from serving their sentences in local custody under realignment.  (Pen. Code, § 1170, subd. (h)(3).) .)  The abstract of judgment designates defendant's offense as "Assault with deadly weapon," which is enough to render the crime a serious one.  (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065, 1069-1070.)